# Richmond

RICHMOND GREYHOUND LINES, INC., v. PATTIE H. RAMOS.

January 13, 1941.

Record No. 2282.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

*Alexander H. Sands* and *Alexander H. Sands, Jr.,* for the plaintiff in error.

*O. R. Cunningham* and *V. P. Randolph, Jr.,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Pattie H. Ramos instituted this action against Richmond Greyhound Lines, Inc., to recover damages for personal injuries. The jury returned a verdict for $1,850, on which the trial court entered judgment for plaintiff. From that judgment defendant obtained this writ of error.

The decisive question presented is whether the evidence is sufficient to sustain the verdict.

Plaintiff and her son were passengers on one of defendant's buses *en route* from Alexandria to Richmond, Virginia. She sat on one side of the aisle and her son on the other. About thirty minutes after leaving Alexandria, plaintiff decided to take a seat on the opposite side of the bus. As she stepped into the aisle the bus started with a jerk that caused her to fall astride the arm of the seat. She resumed her former seat and later moved without mishap across the aisle to a seat beside her son. She told him that she had been hurt a few minutes before. They continued their journey to Richmond without notifying the bus driver or any of the other nine passengers of the injury. She left the bus at Chamberlayne avenue and walked three or four squares to her home. The same afternoon her husband reported the accident to defendant. The medical testimony shows that plaintiff had suffered a fracture of the lower spine and that it was quite painful. She was confined to bed for six weeks. Thereafter the doctors placed her in a special corset with extra stays to support each side of

the back. At the time of the trial she had difficulty in sitting down. Dr. Page Mauck testified that it would be several months before her injuries would heal completely.

The only ground of negligence relied upon is the "jerking" of the bus at the time plaintiff attempted to change her seat.

The only evidence, tending to support the charge of negligence alleged, is the testimony of plaintiff, the substance of which is that she waited for the bus to stop before attempting to change seats, and that, as she was in the act of taking "this high step down * * * the bus started and jerked me over against this arm." She repeated the statement as to the "jerking" of the bus five times in her direct and cross examination. Her son, who sat diagonally across from her, did not notice any sudden or unusual motion of the bus; in fact, he did not know that his mother had been injured until sometime thereafter. None of the other nine passengers were called as witnesses. The bus driver denied any sudden or unusual jerking of the bus from the time it left Alexandria until it arrived in Richmond.

Plaintiff contends that her own testimony, summarized above, and the seriousness of the injury establish the negligence charged.

The general rule is that a carrier is not liable for jerks or jolts which are necessarily incident to the use of the conveyance. The rule is otherwise where the jerks or jolts are unnecessary or unusually sudden or violent. 13 C. J. S., Carriers, section 750, page 1410; 10 Am. Jur. 213.

Judge Buchanan, in *Norfolk & W. R. Co.* v. *Rhodes,* 109 Va. 176, 182, 63 S. E. 445, 448, said: "As the law does not presume that anyone has been negligent, it is always necessary, in order to recover against a common carrier on that ground, to prove negligence, either directly or by evidence of facts from which it may be reasonably presumed.

" * * * . It is a matter of common knowledge, as well as shown by the record, that trains or cars in passing rapidly over curves in the road, lurch, rock or swing, and that this is unavoidable. Railroad tracks cannot always be straight. The movement of trains is rapid, and the inevitable result is that the natural laws of motion cause the car to rock or swing or lurch as it passes over curves. This cannot be prevented and is one of the risks which a passenger assumes. * * * .

"It is true that the plaintiff and one of his witnesses express the opinion that the rocking or lurching when the plaintiff was injured was unusual and extraordinary, but they testify to no facts which show that it was unusual or extraordinary."

■ The present case involves a bus operated by a common carrier using the State highway as a roadbed. Ordinary jerks and jolts of the bus are incident to the stopping to discharge and take on passengers, and to the observance of the rights of other users of the highway. The jerk in the pending case was so slight that none of the eleven passengers observed it except plaintiff. Not even her 16-year-old boy could testify that there had been any unusual motion of the bus. The starting of the bus may have had some bearing upon plaintiff's loss of balance or equilibrium, but, in order to establish negligence, some facts as to its unusual or extraordinary character, as distinguished from mere opinions, must be proven.

In *Phinney* v. *Eastern Massachusetts St. Ry. Co.,* 285 Mass. 207, 189 N. E. 52, 53, the court states: "Undoubtedly movements of the car in starting played a part in the plaintiff's accident but liability of the defendant arose only if those movements were unusual or extraordinary. What in fact happens to the person of a passenger walking in a street car in the manner and under the circumstances here described may depend upon the passenger's firmness of hold and condition as to balance as well as upon the degree of violence of the movements

of the car. The fact that the plaintiff was thrown off balance, in the absence of evidence as to her state of balance at the time the car started, does not warrant the conclusion that the startnig was unusual in violence (see *Griffin* v. *Springfield Street Railway* [*Co.*], 219 Mass. 55, 56, 106 N. E. 551).''

Mr. Justice Holt, in *Richmond-Ashland Ry. Co.* v. *Jackson,* 157 Va. 628, 162 S. E. 18, said: ''It is true that many cases hold, and we think correctly, that before there is any presumption of negligence plaintiff must prove that the jar or jolt was unusual. We are cited to many cases so holding, and since it is conceded that this is a reasonable rule, we deem it unnecessary to discuss them. Some jolting is to be expected. That is usual in the operation of cars of this kind, and it is only when this jolting or jerking is so unusual that a person of ordinary prudence could not have anticipated it, that negligence is to be presumed.''

A number of cases are cited in the briefs, but the above rules are well settled, hence we deem it useless to cite other authorities. The fall of plaintiff, with its resulting injury, seems to be one of those unfortunate accidents, which sometimes happen, for which the law holds no one responsible.

The judgment of the trial court is reversed and final judgment for defendant entered herein.

*Reversed and final judgment.*