*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF NANCY RIEGEL, by VONNA
SCHNEIDER and HAROLD BROWNING, Co-
Personal Representatives,

UNPUBLISHED
March 24, 2020

        Plaintiff-Appellant,

v

No. 345618
Macomb Circuit Court
LC No. 2017-004282-NI

SUBURBAN MOBILITY AUTHORITY FOR
REGIONAL TRANSPORTATION and VALERIE
HINES,

        Defendants-Appellees.

Before: BECKERING, P.J., and SAWYER and GADOLA, JJ.

PER CURIAM.

Plaintiff[1] appeals from an order of the circuit court granting summary disposition in favor of defendants.[2] We affirm.

Plaintiff, who was in a wheelchair, was injured while riding a bus operated by the Suburban Mobility Authority for Regional Transportation (SMART) and driven by defendant Hines. The

---

[1] Nancy Riegel died while this appeal was pending. So far as we are aware, her death was not the result of injuries suffered in this accident.

[2] It is not entirely clear on which basis the trial court granted summary disposition. Defendants moved under MCR 2.116(C)(7) (immunity granted by law), (C)(8) (failure to state a claim), and (C)(10) (no genuine issue of material fact). The trial court's order merely states that the motion is granted. Similarly, at the motion hearing, the trial court did not specifically reference which subrule under which it was granting summary disposition. But we agree with plaintiff's statement in its brief that, given the trial court's comments at the hearing, it was most likely granting summary disposition under MCR 2.116(C)(10).

-1-

trial court concisely summarized the events leading up to plaintiff's injuries at the September 4, 2018 motion hearing as follows:

> THE COURT: I read your pleadings and we have Miss Riegel in her wheelchair, picked up, appropriately secured in the bus. She refused the seatbelt, and we have a stop at a yellow light, although that is hastily, but nonetheless a stop at the yellow light, and she slid off her chair on [onto--?] the floor and sustained injuries. Does that pretty much sum it up?

Both parties agreed that it did. The trial court offered the following opinion at the end of the hearing:

> THE COURT: I read your argument. It's all in your pleadings, Counsel. She approached the yellow light, determined that she couldn't make the appropriate stop at the yellow light which appropriately is required if it can be done, done safely. It was done. It was done safely. The only issue is maybe a little too quick for somebody in a wheelchair who decided on her own volition not to strap in, and she could have.
>
> The Court considering it in the light most favorable to the non-moving party, I grant your motion for summary disposition.

Plaintiff does not contest that her wheelchair was properly secured in the bus nor does she contest that she declined the offer of a seatbelt for herself. Rather, plaintiff argues that the driver, instead of stopping for the yellow light, should have proceeded through the light.

We review the trial court's decision de novo. *Seldon v Suburban Mobility Authority for Regional Transp*, 297 Mich App 427, 432; 824 NW2d 318 (2012). In reviewing a motion brought under MCR 2.116(C)(10), we consider the evidence in the light most favorable to the nonmoving party and determine whether there is a genuine issue of material fact that warrants a trial. *Id.* at 437.

The facts of this case are very similar to those in *Seldon,* and we conclude that *Seldon* controls the outcome of this case. Like in this case, the plaintiff in *Seldon* was injured when she was ejected from her wheelchair when the driver of the SMART bus applied the brakes to stop at a yellow traffic light. This Court, 297 Mich App at 437-438, concluded that the plaintiff failed to establish a question of fact regarding negligence:

> The trial court erroneously determined that plaintiff presented evidence establishing a justiciable question of fact regarding whether Perry operated the bus negligently. It is well settled that, absent evidence of other negligence pertaining to the operation of a bus, a plaintiff bus passenger may not recover for injuries sustained when the bus suddenly stopped because such stops are normal incidents of travel. *Russ v Detroit,* 333 Mich 505, 508; 53 NW2d 353 (1952); *Sherman v Flint Trolley Coach, Inc,* 304 Mich 404, 416; 8 NW2d 115 (1943); *Zawicky v Flint Trolley Coach Co, Inc,* 288 Mich 655, 658–659; 286 NW 115 (1939). Here, the record contains no evidence that Perry operated the bus negligently. The only

evidence of the bus's speed near the time that plaintiff was ejected from her wheelchair shows that Perry was driving within the 35–mile–per–hour speed limit. Plaintiff contends that Perry operated the bus negligently because Perry failed to anticipate that the green traffic signal light would change to yellow. This argument is untenable, however, because Perry did not act negligently by traveling within the speed limit while the traffic signal light was green. Further, the mere fact that an injury occurred does not itself indicate that Perry operated the bus negligently. See *id.* at 659. Accordingly, plaintiff failed to present evidence establishing a justiciable question of fact regarding whether Perry operated the bus negligently. Thus, summary disposition was appropriate on this basis, and the trial court's decision to the contrary was erroneous.

Similarly, this Court rejected the argument that the driver was grossly negligent inasmuch as the plaintiff could not even establish ordinary negligence. *Seldon*, 297 Mich App at 442.

Plaintiff makes no argument that Hines was operating the bus in any other manner that would be considered negligent. That is, there is no argument that she was speeding, that the bus left its lane or failed to stop before entering the intersection, nor that it struck another vehicle or object. There is no indication that the driver herself was injured in the stop, nor was plaintiff's caregiver.[3] Plaintiff points to no fact that would establish that this is anything other than the ordinary sudden stops to be expected of a bus. For that matter, as with the plaintiff in *Seldon*, there is no reason to believe that plaintiff would have been ejected from her wheelchair and suffered injury had she chosen to use the available seatbelt.[4]

Plaintiff suggests that we should decline to follow *Seldon* because *Seldon* improperly "abandoned" prior Supreme Court precedent in *Sherman v Flint Trolley Coach, Inc*, 304 Mich 404; 8 NW2d 115 (1943), and *Zawicky v Flint Trolley Coach Co, Inc*, 288 Mich 655; 286 NW 115 (1939). In fact, *Seldon* relies on both of those cases in its holding that it is well settled that a bus passenger may not recover for injuries sustained due to a sudden stop. 297 Mich App at 437. It is unclear where plaintiff is finding support in those two cases. The *Sherman* Court, after reviewing an earlier case, explicitly stated that the sudden stopping of a trolley car was not actionable negligence. 304 Mich at 416. And there is only slight support in *Zawicky*, where the Court reaffirmed the rule that sudden stops do not ordinarily give rise to a claim of negligence and liability would only be established "if the jerk or jolt was unnecessarily sudden or violent . . . ." 288 Mich at 658-659.

Moreover, it must be remembered that the Michigan Vehicle Code requires that a motor vehicle upon encountering a yellow must come to a stop. MCL 257.612(1)(b) provides as follows:

---

[3] The most that plaintiff argues with respect to the caregiver is that she had to steady herself during the stop.

[4] Indeed, in this case, Hines went further than the driver in *Seldon* in that she asked plaintiff if she wished to use the seatbelt whereas one of the claims in *Seldon*, which this Court rejected, was that the driver failed to advise the plaintiff of the availability of a seatbelt. 297 Mich App at 432-434.

(b) If the signal exhibits a steady yellow indication, vehicular traffic facing the signal shall stop before entering the nearest crosswalk at the intersection or at a limit line when marked, but if the stop cannot be made in safety, a vehicle may be driven cautiously through the intersection.

Plaintiff argues that the fact that she was ejected from her wheelchair establishes that the stop could not be made safely and that Hines should have driven through the intersection. But this argument merely brings us full circle to our original discussion: the bus was able to stop safely before entering the intersection, as required by the statute. Plaintiff's injuries were the product of her choice not to wear a seatbelt. While plaintiff certainly had a right to make that choice, making that choice comes with the consequences of doing so. Indeed, as the Court observed in *Zawicky*, there is an obligation upon a passenger in a bus that makes stops to "look after her own protection and hold on to bars, straps, handles or whatever is furnished in order to protect herself from falling." 288 Mich at 659. In this case, the "whatever is furnished" was a seatbelt, which most likely was not even available on a trolley bus in the 1930s.

Affirmed. Defendants may tax costs.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Michael F. Gadola